**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| DR. NASRAT ESBAI<br>an individual, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. |
| | ) | |
| | ) | |
| BOARD OF TRUSTEES OF COMMUNITY | ) | |
| COLLEGE DISTRICT #508 d/b/a CITY | ) | |
| COLLEGES OF CHICAGO, LYNN WALKER, | ) | |
| | ). | |
| Defendants. | ) | |

## PLAINTIFF'S COMPLAINT FOR DISCRIMINATION

Dr. Nasrat Esbai ("Esbai"), an Illinois resident, by her attorneys, Rab & Khan, LLP, in support of its Verified Complaint against Defendants Board of Trustees of Community College District #508 ("CCC") and Lynn Walker alleges as follows:

## INTRODUCTION

1.      Dr. Esbai brings this action against her former employer for terminating her employment at Truman College in Chicago, IL because of her race and religion. Dr. Esbai also states that her dismissal was in retaliation for her support of a Muslim Vice President at Truman College. Finally, Dr. Esbai brings a supplementary claim for breach of an oral agreement with CCC that guaranteed that she would be permitted to return to a faculty position if, for any reason, she no longer was retained as the Director of the Nursing Program at Truman College in Chicago, IL.

2.　　　Dr. Esbai served as a Professor in Truman College's Nursing Program from August 2007 to December 2007.  When the Director of Nursing position became available, Truman College was in dire need of a replacement because the Nursing Program was preparing for an accreditation review.  After interviewing Dr. Esbai, CCC decided to offer her the position because of her outstanding record and extensive qualifications. Dr. Esbai was hesitant to accept the offer because it would require her to give up her faculty position.  To allay her concerns, CCC promised that she would only serve as Director of Nursing on an interim basis, and that a faculty position would be waiting for her when she was no longer needed as Director.

3.　　　During the course of Dr. Esbai's employment as Director of Nursing, she worked tirelessly to solidify the Nursing Program and prepare for the all-important accreditation review. Despite her efforts, Dr. Esbai fell out of favor with the President of Truman College, Defendant Lynn Walker, due to her ethnicity, race, national origin, and religion.  Her efforts towards accreditation were ignored and soon Walker took away Esbai's main responsibilities.

4.　　　Soon after her role as Director of Nursing became marginalized, Dr. Esbai was informed that she was being investigated for violating CCC's residency requirement that all personnel live in with the City of Chicago.  Dr. Esbai cooperated with the investigation and clearly pointed out that while she rented an apartment in Chicago, she still owned a house in Skokie, IL that she was trying to sell for many months.  Dr. Esbai presented clear evidence to CCC's Inspector General that she lived in Chicago, including a signed lease and utility bills. Although the Inspector General was satisfied with Dr. Esbai's explanation, Walker abruptly terminated Dr. Esbai citing a failed residency requirement.  The termination was baseless as Esbai did not violate the residency requirement.

5.        . CCC and Walker also failed to provide a hearing for Dr. Esbai to present her case before a final decision regarding termination was reached.  Such a hearing was regularly provided to other terminated administrators.

6.        Due to her race, ethnicity, national origin, and religion, Dr. Esbai was treated differently than similarly situation employees at CCC.    For example, other employees at Truman College were permitted to live outside of the City of Chicago.  Similarly, other employees were provided an opportunity to challenge their termination before any final decision was made.

7.        CCC and Walker's discriminatory intent becomes more apparent due to an extensive pattern against Muslim faculty and administrators at Truman College.

8.        After she was terminated, Dr. Esbai demanded that she be returned to her faculty position, but was told that Truman College would not honor her request.  As a direct result of CCC's failure to honor its promise to return Dr. Esbai to her faculty position, Dr. Esbai is still unemployed today.

## PARTIES

9.        Dr. Nasrat Esbai is an individual residing in Skokie, IL.  She is a Registered Nurse and has earned a Doctorate in Nursing.  She is an Arab Muslim of Middle-Eastern origin.

10.        Board of Trustees of Community College District #508 d/b/a City Colleges of Chicago ("CCC") is a public community college district, organized under the laws of the state of Illinois.  Truman College is one of seven colleges operating under CCC.  CCC and Truman College are the employers of Dr. Esbai.  CCC has over 500 employees.

11.        Lynn Walker is the Interim President of Truman College.  Pursuant to the power granted to her from the CCC, Walker fired Dr. Esbai.

3

## JURISDICTION AND VENUE

12.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C.

§1331 and 28 U.S.C. §1343(a)(4), 42 U.S.C. §1983 and 28 U.S.C. §1367.

13.     Venue is proper in the Northern District of Illinois, pursuant to 28 U.S.C.

§1391(b), because defendant is domiciled and a substantial part of the events giving rise to the

claims occurred in this district.

## BACKGROUND FACTS

### *Director of Nursing*

14.     Dr. Esbai is a registered nurse ("RN") with a doctorate in Nursing.  She was hired

by Truman College, one of the City Colleges of Chicago (CCC), in August 2007 as a full-time

tenure-track faculty in the Department of Nursing.  Dr. Esbai excelled in this position.

15.     Truman College has long had a reputation of having a first class Department of

Nursing.  The most important part of maintaining this reputation was for the Department of

Nursing to receive accreditation from a nationally recognized organization.  In late 2007, the

Director of Nursing, Ms. Debra Terrell, decided to step down from her position partly due to the

fact that the accreditation process was too challenging and time-consuming for her.

16.     After Ms. Terrell resigned from her position at Truman, the College was in

desperate need to find someone to direct the accreditation effort.  Truman Vice President, Dr.

Pervez Rehman, sought out Dr. Esbai as a potential internal candidate for the position.  Dr. Esbai

was qualified for the position given that she was the only faculty member with a doctorate in

Nursing.  Furthermore, she had proven to be an outstanding professor during her time at Truman.

17.     Dr. Esbai immediately expressed reservations about the position because she did

not want to give up her faculty position.  She enjoyed teaching and did not want to risk losing the

4

benefits afforded to faculty members through the collective bargaining agreement. Dr. Esbai also expressed concerns that she had no experience as a department director and that there would be a steep learning curve for her. Dr. Rehman assured Dr. Esbai that she would only serve as Director of Nursing on an interim basis and then return to her faculty position. Dr. Rehman also stated that if, for any reason, the new position did not work out, Dr. Esbai would be allowed to return to her old faculty position.

18.     Based on CCC's promises, Dr. Esbai agreed to interview for the Director of Nursing position. On or about January 2008, Dr. Esbai was hired by CCC for the position. Dr. Esbai immediately began to fulfill the duties of her new position. She led department meetings, created faculty programs, and spent countless hours finding adjuncts to teach clinical classes. Most importantly she began the process of accreditation through the National League for Nursing Accreditation Commission ("NLNAC"). From the very onset, Dr. Esbai faced many obstacles to her success.

19.     Her work on accreditation was thwarted by a lack of support from the college administration to provide meeting minutes and internal reports that were necessary for the NLNAC process. Dr. Esbai also faced reluctance from the faculty to participate in the accreditation process.

20.     The toughest obstacle facing Dr. Esbai, however, was the lack of support from Defendant Walker, the Interim President, and Elizabeth Roeger, the Dean of Instruction. The lack of support soon became an all out attempt to sabotage Dr. Esbai. For example, Dr. Esbai requested at least two additional full-time faculty and was told by Walker that there was no budget for that. Dr. Esbai then asked for office support because she was managing a program that was at least twice as large as most of the other Nursing Programs at CCC, but was told

repeatedly that the money was not there. Dr. Esbai spent countless hours looking for adjunct faculty to cover all the lecture and clinical sections. She would get to work early in the morning and often would not leave until 9:00 PM. She regularly worked six and sometimes seven days a week. Her requests for support were ignored until after her dismissal in January 2009, when several full-time faculty and full-time support staff were hired to help the new nursing director.

21.     Walker and Roeger also began to marginalize Dr. Esbai by taking over faculty meetings set by Dr. Esbai to work on the accreditation process. Dr. Esbai developed a good relationship with the NLNAC with the assistance of an independent consultant that she hired. Despite these advancements, Roeger and Walker, as part of a continuing effort to undermine Esbai, wasted public resources by hiring a new consultant at nearly three times the cost of the consultant retained by Dr. Esbai. The new consultant was a friend of Ms. Roeger and repeated much of the same work that the previous consultant had done. Eventually, the new consultant took over the accreditation process and replaced Esbai as Director of Nursing.

22.     In spite of the fact that her authority as Director of Nursing was completely compromised, Dr. Esbai continued to work very hard towards the accreditation often working holidays and weekends to complete the process.

*Termination*

23.     As Dr. Esbai's role diminished, Walker and Roeger actively sought to remove Dr. Esbai from her position. Actively seeking reasons to terminate Dr. Esbai, Walker began to investigate Esbai's living arrangement. Specifically, she sought to terminate her for violating the school's requirement that all employees reside in Chicago. The defendants were already aware that Dr. Esbai owned a house in Skokie, IL which she was attempting to sell.

6

24.     Despite the fact that she was unable to sell her home, Dr. Esbai moved into an apartment in Chicago starting in August 2008.  Coinciding with Dr. Esbai's diminished role and the active harassment by Walker and Roeger, an official investigation was conducted by the Office of the Inspector General.  As part of the investigation, Dr. Esbai was brought in for a mandatory interview.  During the November 24, 2008 interview, Dr. Esbai presented evidence of the lease and rent payments for her Chicago apartment.  She also presented evidence of gas and electric bills along with parking tickets she received while parking by her apartment.  Finally, she explained that her apartment had been broken into and that she was in the process of finalizing a lease for a new apartment in Chicago.

25.     After listening to Dr. Esbai's answers and reviewing the evidence of her Chicago residency, the Inspector General agreed that Dr. Esbai had sufficiently complied with the residency requirement and that she should be given additional time to find a new, safer residence.  The Inspector General mentioned, however, that the final decision would rest with Walker.  Dr. Esbai immediately informed Walker that she was living in Chicago since August 2008 but needed to find a new apartment.  By December 1, 2008, Dr. Esbai signed a lease at 8317 W. Irving Park Road in Chicago, but Walker persisted in her goal to remove Dr. Esbai.

26.     Despite all the evidence that Dr. Esbai complied with the residency requirement, Walker terminated Dr. Esbai without warning on Friday, January 2, 2009.  She stated that the termination was for violating the residency requirement.  Dr. Esbai was not given a written notice of termination nor was she given any pre-disciplinary hearings.  Furthermore, Walker, in a blatant attempt to create the impression of following standard procedures, sent a notice letter to Dr. Esbai *after* she was terminated to set up a hearing.  The discipline letter was backdated to December 28, 2008 in a transparent attempt to mislead the City Colleges Board that Dr. Esbai

7

was given a legitimate hearing. The discipline letter scheduled a hearing for January 5, 2009. That hearing never took place.

27.     Soon after her termination, Dr. Esbai pleaded with CCC's Vice Chancellors, Xiomara Cortes Metcalfe and Angela Starks. Dr. Esbai explained that she had complied with the residency requirement and that her termination was improper. She also alerted CCC that she had been promised that if she lost her position as Director of Nursing she would be given a faculty position.

28.     Without the protections of the collective bargaining agreement, Dr. Esbai was left at the whim of Walker who terminated Dr. Esbai because of her ethnicity, race, national origin, and religion. There was no formal notice nor was Dr. Esbai given a hearing, before or after termination. Only after exhausting all remedial avenues available to her did Dr. Esbai file a charge with the U.S. Equal Employment Opportunity Commission ("EEOC").

*Discrimination*

29.     The reasons behind the termination were clear. CCC has a long history of flexibility of its residency requirement, which it has afforded to employees at Truman College. Dr. Esbai lived in Chicago, despite the financial pressure of paying for her house in Skokie and a Chicago apartment, but was terminated for allegedly violating the requirement. Dr. Esbai was terminated without the notice afforded to other similarly situation personnel.

30.     Three months after Dr. Esbai's termination, the CCC's Board changed the residency policy for all new full-time employees based on the state of the housing market. The new policy allowed for an additional six months extension over the one year normally granted to employees seeking to comply with the CCC Residency Policy.

31.     Prior to her termination, the defendants demonstrated a series of actions and policies that unlawfully discriminate against Muslims and minorities of Middle Eastern and South-Asian descent.

32.     Most recently, Walker ignored appeals to rectify the racially and religiously hostile environment perpetrated by supervisor Dr. George Bart against Dr. Shams Jaffer and other Muslims, even though an internal Equal Employment Opportunity investigator at CCC concluded that Dr. Jaffer was in fact discriminated by her supervisor at Truman College. Dr. Jaffer has since filed a lawsuit against CCC and Walker. *See Jaffer v. Board of Trustees of Comm. College Dist. #508 et al.* (09-CV-05710).

33.      Walker also ignored the discriminatory hiring process at Truman College. For example, Dr. Bart openly added additional obstacles to the hiring process when highly qualified Muslim and Arab candidates sought faculty positions. Numerous Muslim and Arab candidates with doctorate degrees were not even allowed to interview for faculty positions. Dr. Bart made his intentions clear by stating, "Oh yes, we pay these people and they will send home that money and they will buy guns and will shoot innocent people and will get involved in terrorist acts." When CCC was made aware of these discriminatory policies, they were summarily ignored.

34.     In December 2008, Walker terminated the highest ranked Muslim at and Vice President of Truman College, Dr. Pervez Rehman. Dr. Rehman was an outstanding employee of the City Colleges and had served the system for over twenty-five years, first as a faculty member, and then as an administrator. He served in the roles of Assistant Dean, Dean, and finally Vice President. In May 2008, he received the "Outstanding Administrator of the Year" award. Dr. Rehman's suspicious termination forced Muslim employees at Truman College to either quietly hope to avoid discriminatory treatment or openly resist the discrimination. Dr.

Esbai's future was sealed when she openly voiced her concerns regarding Dr. Rehman's termination by Walker, who retaliated by firing Esbai.

## COUNT I – VIOLATION OF TITLE VII (RELIGION)

35.     Dr. Esbai realleges and incorporates by reference Paragraphs 1-34 of this Complaint as paragraph 35 as if fully set forth herein.

36.     Dr. Nasrat Esbai is an Arab Muslim of middle-eastern descent who was employed by the CCC for one and a half years.  She is member of a minority group and a protected class.

37.     CCC is an employer as defined by 42 U.S.C. §2000e-2.

38.     She was promoted to become Director of Nursing at Truman College because she was the most qualified individual at the school and the only faculty willing to leave a tenure-track position to help the college.  She fulfilled her job responsibilities to the complete satisfaction of Truman College.

39.     Defendants CCC, Lynn Walker, and Truman College violated Dr. Esbai's rights by treating her differently than other employees because of her religion.

40.     Specifically, CCC placed more scrutiny on Dr. Esbai than on other similarly situated employees.  In fact, the CCC has previously permitted and currently permits employees to live outside the city limits.  Similarly situated employees who have violated the residency policy have not had any scrutiny or investigation initiated against them.

41.     Even though she was unable to sell her home in Skokie, Dr. Esbai rented an apartment at 1024 W. Leland Street in Chicago, Illinois and made it her primary residence in order to comply with the residency requirement.  Despite complying with the residency requirement, Dr. Esbai was terminated.

42.     Due to her religion, the defendants instituted a different termination process for Dr. Esbai than other similarly situation employees.  As a standard practice, CCC holds hearings to allow employees to question the grounds upon which they will be terminated.  Dr. Esbai was not afforded any such hearing.

43.     Finally, Dr. Esbai was replaced by an individual who was not Muslim.  All the acts committed against Dr. Esbai demonstrate how the defendants intentionally discriminated against Dr. Esbai on the basis of her religion.

44.     Because of CCC's failure to correct the discriminatory actions of Lynn Walker, Dr. Esbai was forced to file a charge with the U.S. Equal Employment Opportunity Commission on June 3, 2009. (A copy of that charge is attached hereto as Plaintiff's Exhibit 1.)  On December 28, 2009, the Civil Rights Division of the U.S. Department of Justice issued a right to sue letter to Dr. Esbai, permitting her to file this complaint within 90 days. (A copy of the letter is attached hereto as Plaintiff's Exhibit 2.)

45.     As a direct and proximate result of the disparate treatment against her religion, Dr. Esbai has suffered loss of wages and benefits, mental anguish, anxiety, and emotional distress.

## COUNT II – VIOLATION OF U.S.C. §1981 (RACIAL DISCRIMINATION)

46.     Dr. Esbai realleges and incorporates by reference Paragraphs 1-45 of this Complaint as paragraph 46 as if fully set forth herein.

47.     Dr. Esbai is a member of the Arab race.  From August 2007 to January 2009, Dr. Esbai was employed by CCC and worked at Truman College.  She was fired in January of 2009 and replaced by Vicky Gubenberger, who is not an Arab.

48.     Lynn Walker and the CCC intentionally discriminated against Dr. Esbai by infringing on her right to make and enforce contracts and by harassing and eventually terminating her employment because of her Arab race, ethnicity, and her minority status.

49.     Defendants' actions constitute racial discrimination in violation of 42 U.S.C. §1981.

50.     As a result of Defendants' actions, Dr. Esbai suffered severe mental anguish, anxiety, humiliation, emotional distress, as well as lost wages.

## COUNT III – VIOLATION OF 42 U.S.C. §1983 (EQUAL PROTECTION RIGHTS)

51.     Dr. Esbai realleges and incorporates paragraphs 1-50 of this Complaint as paragraph 51 as if fully set forth herein.

52.     Defendant CCC is a public employer because it is a state agency. Lynn Walker, as Interim President of Truman College, was in a final policy-making position with regard to the administration and management of the college. Defendants CCC and Lynn Walker acted under the color of the state. Their actions were related to the performance of their public employment duties.

53.     Defendants CCC and Lynn Walker denied public employee Dr. Esbai her federally protected rights. Dr. Esbai is a member of a suspect class because of her status as a Muslim and as an Arab.

54.     Specifically, Defendants CCC and Lynn Walker violated Dr. Esbai's federal rights under the Equal Protection Clause of the 14th amendment of the Constitution and 42 U.S.C. §1981. In addition, Defendant CCC violated her federal rights under 42 U.S.C. §2000e-2 (Title VII).

55.     The intentional actions of Defendants CCC and Walker directly and proximately caused Dr. Esbai to suffer lost wages, severe emotional distress, mental anguish, humiliation and anxiety.

## COUNT IV – BREACH OF CONTRACT

56.     Dr. Esbai realleges and incorporates paragraphs 1-55 of this Complaint as paragraph 56 as if fully set forth herein.

57.     Dr. Esbai entered into an agreement with CCC.  The terms of the agreement were that she would agree to accept the Director of Nursing position on an interim basis and resign from her faculty position.  In exchange, CCC guaranteed that if and when Dr. Esbai was no longer serving as the Director of Nursing, she would be permitted to return to her faculty position.

58.     Dr. Esbai fulfilled all of her duties and conditions precedent under the agreement.

59.     CCC breached the agreement by terminating Dr. Esbai from her position as Director of Nursing and failing to reinstate her to a faculty position in the Nursing Department.

60.     Due to CCC's breach of contract, Dr. Esbai has suffered significant damages, including lost wages, severe emotional distress, mental anguish, humiliation and anxiety.

WHEREFORE, the Plaintiff, Dr. Nasrat Esbai, prays that this Court enter a judgment on her behalf and against Defendants City Colleges of Chicago and Lynn Walker granting the following relief:

(a) Permanently enjoin the Defendants from engaging in each of the unlawful practices, policies, customs, and usages set forth herein and from continuing any and all other practices shown to be a violation of applicable law;

(b) Order CCC to remove Defendant Walker as President of Truman College;

(c) Award compensatory damages including but not limited to lost wages;

13

(d) Award punitive damages;

(e) Award post-judgment interest, attorneys' fees and all costs and expenses of suit;

(f) Such other and further relief as the Court deems appropriate.

Respectfully Submitted,

DR. NASRAT ESBAI

_____/s/ Zubair Khan_____
One of her attorneys

Zubair Khan
RAB & KHAN LLP
560 West Washington Street
Suite 400
Chicago, Illinois 60661
(312) 612-7619 (phone)
(312) 575-9053